**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **REVOLVE SOLAR (TX) INC.,** | § | **CASE NO. 16-10897-tmd** |
| | § | |
| **REVOLVE SOLAR (CA) INC.,** | § | **CASE NO. 16-10899-tmd** |
| | § | **Chapter 11** |
| Debtors. | § | |

## SECOND AMENDED JOINT PLAN OF REORGANIZATION

### DATED January 20, 2017

Revolve Solar (TX) Inc. and Revolve Solar (CA) (collectively "Revolve Debtors"), Debtors in the specified bankruptcy cases, propose the following First Amended Joint Plan of Reorganization Dated January 20, 2017 ("Plan"), pursuant to Chapter 11 of the United States Bankruptcy Code on behalf of the Debtors.

## TABLE OF CONTENTS

**ARTICLE I: Introduction** ................................................................................................ 5

    **1.1**     **Introduction** ........................................................................................ 5

    **1.2**     **Merger** ................................................................................................ 5

    **1.3**     **Definitions** .......................................................................................... 5

**ARTICLE II: Concept of Plan and Means for Implementation** .................................. 9

    **2.1**     **Concept of Plan** ................................................................................. 9

    **2.2**     **Issuance of New Equity** .................................................................... 9

    **2.3**     **Reorganized Debtors** ....................................................................... 9

    **2.4**     **Post-Petition Governance of Reorganized Debtor** ......................... 9

**ARTICLE III: Classification of Claims and Interests** .............................................. 10

**ARTICLE IV: Provisions for Payment of Administrative Expenses and Priority Tax Claims** ....... 10

    **4.1**     **Treatment of Allowed Administrative Expenses** ........................... 11

    **4.2**     **Treatment of Allowed Priority Claims** .......................................... 11

    **4.3**     **Title 28 U.S.C. Section 1930 Fees** ................................................. 11

**4.4**     **Convenience Classes of Unsecured Claims** ......................................... 11

**ARTICLE V: Treatment of Claims and Interests** ...................................................... 12

    **6.1**     **Claims against Revolve Solar (TX) Inc.** ....................................... 12

        **6.1.1**     **Class TX 1: Allowed Priority Claims of Employees and Contractors** ............ 12

        **6.1.2**     **Class TX 2: Allowed Priority Claim of the IRS** ................................... 13

        **6.1.3**     **Class TX 3: Allowed Priority Claims of Taxing Authorities** ................... 14

        **6.1.4**     **Class TX 4: Allowed General Unsecured Claims Greater than $20,000.** ........ 14

        **6.1.5**     **Class TX 5: Allowed General Unsecured Claims $20,000 or less** ............... 15

        **6.1.6**     **Class TX 6: Equity Interests in the Debtor** ........................................ 16

    **6.2**     **Claims against Revolve Solar (CA) Inc.** ....................................... 18

        **6.2.1.**     **Class CA 1: Allowed Priority Claim of Cornelius Fredrick Moore** ........... 18

        **6.2.2**     **Class CA 2: Allowed Priority Claims of Employees and Contractors** ......... 18

        **6.2.3**     **Class CA 3: Allowed Priority Claim of the IRS** ................................... 19

        **6.2.4**     **Class CA 4: Allowed General Unsecured Claims Greater than $20,000.** ..... 20

        **6.2.5**     **Class CA 5: Allowed General Unsecured Claims $20,000 or less** ............ 20

        **6.2.6**     **Class CA 6: Equity Interests in the Debtor** ....................................... 22

**ARTICLE VI: Voting** ...................................................................................................... 23

**ARTICLE VII: Plan Implementation** ............................................................................ 23

**ARTICLE VIII: Executory Contracts and Unexpired Leases** ..................................... 23

    **8.1**    **Assumption of Executory Contracts** ................................................... 23

    **8.2**    **Rejection of Executory Contracts and Unexpired Leases** ...................... 24

    **8.3**    **Reservation of Rights** ........................................................................ 24

    **8.4**    **Bar Date for Claims Based on Rejection** ............................................. 24

**ARTICLE IX: Discharge, Releases, and Limitation of Liability** ................................. 24

    **9.1**    **Releases and Discharge of Claims and Interests** ................................... 24

    **9.2**    **Released Parties** ................................................................................ 25

    **9.3**    **Limitation of Liability** ...................................................................... 25

**ARTICLE X: Claims and Resolution of Claim Disputes** ............................................ 26

    **10.1**    **The Debtors' Causes of Action** ........................................................... 26

    **10.2**    **Time for Filing Claims** ...................................................................... 26

    **10.3**    **Objections to Claims** ......................................................................... 27

**ARTICLE XI: Effect of Confirmation** ........................................................................ 27

    **11.1**    **Discharge and Release of Debtors** ...................................................... 27

    **11.2**    **Legal Binding Effect** ......................................................................... 27

    **11.3**    **Permanent Injunction** ....................................................................... 27

**ARTICLE XII: General Provisions** ............................................................................. 28

    **12.1**    **Request for Relief Under Bankruptcy Code Section 1129** ..................... 28

    **12.2**    **Revocation** ....................................................................................... 29

    **12.3**    **Effect of Withdrawal or Revocation** ................................................... 29

    **12.4**    **Due Authorization by Creditors** ......................................................... 29

    **12.5**    **Entire Agreement** ............................................................................. 29

    **12.6**    **Section 1146 Exemption** .................................................................... 29

    **12.7**    **Provisions Governing Distributions** .................................................... 29

    **12.8**    **Governing Law** ................................................................................. 30

    **12.9**    **Modification of Plan** ......................................................................... 30

    **12.10**    **Number and Gender of Words** ........................................................... 30

    **12.11**    **Headings** .......................................................................................... 30

    **12.12**    **Time Computation** ............................................................................ 31

    **12.13**    **Severability** ...................................................................................... 31

    **12.14**    **No Admissions** ................................................................................. 31

**ARTICLE XIII: Administrative Provisions** ........................................................................................... 31

    **13.1**    **Retention of Jurisdiction** ........................................................................................ 31

    **13.2**    **Successors and Assigns** .......................................................................................... 32

    **13.3**    **Notices** ................................................................................................................... 32

## ARTICLE I: Introduction

### 1.1    Introduction

This Plan is proposed by and on behalf of each Debtor under Chapter 11 of the Bankruptcy Code. Reference is made to the associated Disclosure Statement for a discussion of the Debtors' histories, results of operations, historical financial information, and assets, and for a summary and analysis of the Plan. All holders of Claims against and Interests in a Debtor are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan.

### 1.2    Merger

This plan proposes to merge only certain operations and assets of the Debtors.

### 1.3    Definitions

Unless the context otherwise requires, capitalized terms in this Plan shall have the meanings set forth in this section. Capitalized terms not specifically defined in this section shall have the definitions given those terms, if applicable, in the Bankruptcy Code.

**1.3.1. Administrative Claim or Expense** means an administrative expense or Claim described in Section 503 of the Bankruptcy Code and entitled to administrative priority pursuant to Section 507(a)(l ) of the Bankruptcy Code, including, but not limited to, Claims for compensation of professionals made pursuant to Sections 330 and 331 of the Bankruptcy Code, and all fees and charges assessed against the Debtors and Debtors' property under 28 U.S.C. Section 1930.

**1.3.2. Administrative Tax Claim** means an Unsecured Claim by any governmental unit for taxes (including interest or penalties related to such taxes) for any tax year or period, all or a portion of which occurs or falls within the period from and including the Petition Date through the Effective Date.

**1.3.3. Allowed** shall mean with respect to a right to payment against a Debtor, either as a Claim or expense or otherwise, means such amount that has either been scheduled by a Debtor in its respective schedules as not disputed, contingent, or unliquidated in a specific dollar amount or for which a proof of claim was filed with the Bankruptcy Court on or before the Bar Date, and (a) as to which no objection has been filed with the Bankruptcy Court by the Objection Deadline, or (b) as to which an objection was filed, and then only to the extent allowed by Final Order of the Bankruptcy Court. Unless otherwise specified in this Plan, an Allowed Claim shall not include any amount of punitive damages, penalties, or any amount of interest which may have accrued from and after the Petition Date on any such Claim. Nothing contained herein shall in any way limit the right of the Debtors to request the Bankruptcy Court to designate, pursuant to § 1126(e) of the Code, any Claimant as an entity whose acceptance or rejection of the Plan was not in good faith or is not solicited or procured in good faith or in accordance with the provisions of Chapter 11 of the Code.

**1.3.4. Allowed Claim** means a Claim against a debtor allowable under the Bankruptcy Code to the extent that (i) a proof of Claim, proof of Interest, or request for payment was timely Filed or, with leave of the Bankruptcy Court, late Filed, and as to which no objection has been

timely Filed or, if Filed, is allowed by a Final Order, unless otherwise provided in the Plan or (ii) the Claim is scheduled and not listed as disputed, contingent, or unliquidated, and to which no objection has been timely Filed or, if Filed, is allowed by a Final Order.

**1.3.5.** **Allowed Interests** shall mean the equity interests of all of the holders of any Equity Security of a Debtor prior to the Confirmation Date.

**1.3.6.** **Allowed Secured Claim** means any Allowed Claim secured by a lien, security interest, or other charge or interest in property in which a debtor has an interest, to the extent of the value thereof (determined in accordance with Bankruptcy Code Section 506(a)).

**1.3.7.** **Allowed Administrative Claim or Expense** means an Administrative Claim or Expense Allowed by a Final Order of the Bankruptcy Court following proper application for the approval of payment thereof in accordance with the Code and the Bankruptcy Rules.

**1.3.8.** **Allowed Unsecured Priority Claim** shall mean an Allowed Claim of a creditor which is unsecured and which is entitled to priority under the Bankruptcy Code.

**1.3.9.** **Bankruptcy Code or Code** means the United States Bankruptcy Code, Title 11 of the United States Code, Section 101 et seq., as amended.

**1.3.10.** **Bankruptcy Court** means the United States Bankruptcy Court for the Western District of Texas, Austin Division or such other Court that may have jurisdiction with respect to the reorganization of the Debtors pursuant to Chapter 11 of the Bankruptcy Code.

**1.3.11.** **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure.

**1.3.12.** **Bar Date** means that date subsequent to which a proof of pre-petition Claim may not timely be Filed or the date by which proofs of claims held by governmental agencies must be filed.

**1.3.13.** **Case** means, with respect to the jointly administered bankruptcy case, the above-captioned Chapter 11 Bankruptcy Cases in the Bankruptcy Court, or with respect to each individual debtor, each Debtor's respective individual case, as follows: Revolve Solar (TX) Inc. and Revolve Solar (CA) Inc.

**1.3.14.** **Claim** shall have the meaning set forth in Bankruptcy Code Section 101(5).

**1.3.15.** **Claimant** means any person or entity having or asserting a Claim in the case.

**1.3.16.** **Class or Classes** mean all of the holders of Claims or Interests that the Debtors have designated pursuant to Section 1123(a)(l) of the Bankruptcy Code as having substantially similar characteristics as described in this Plan.

**1.3.17.** **Code** see definition under Bankruptcy Code.

**1.3.18.** **Confirmation** means the entry by the Bankruptcy Court of a Confirmation Order confirming the Plan.

**1.3.19. Confirmation Date** means the date on which the Confirmation Order is entered.

**1.3.20. Confirmation Hearing** means the hearing or hearings held before the Bankruptcy Court in which the Debtors will seek Confirmation of the Plan.

**1.3.21. Confirmation Order** means the Order of the Court confirming the Plan under Section 1129 of the Bankruptcy Code.

**1.3.22. Contested** when used with respect to a Claim, means a Claim against one or more of the Debtors (a) that is listed in the Debtors' Schedules of Assets and Liabilities as disputed, contingent, or unliquidated; (b) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

**1.3.23. Creditor** shall have the meaning specified by Section 101(10) of the Code.

**1.3.24. Debtor** means, individually, one of the Debtors as defined herein.

**1.3.25. Debtors** mean Revolve Solar (TX) Inc. and Revolve Solar (CA) Inc.

**1.3.26. Disputed Claim** means any Claim that is not an Allowed Claim.

**1.3.27. Effective Date** means sixty (60) days after the Confirmation Date.

**1.3.28. Estate** means the estate created pursuant to Bankruptcy Code Section 541 with respect to each of the Debtors.

**1.3.29. Fee Claim** means a Claim under Bankruptcy Code Sections 330 or 503 for allowance of compensation and reimbursement of expenses in the Debtors' Chapter 11 cases.

**1.3.30. Filed** means delivered to the Clerk of the Bankruptcy Court.

**1.3.31. Final Order or Final Judgment** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for petition for certiorari, or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of certiorari, stay, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for certiorari, or move for a stay, new trial, reargument or rehearing shall have expired; provided, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 5020)

or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

**1.3.32. General Unsecured Claim** means an Unsecured Claim that is not entitled to priority under Section 507(a) of the Bankruptcy Code.

**1.3.33. Impaired** shall have the meaning set forth in Bankruptcy Code Section 1124.

**1.3.34. Objection Deadline** means the date set by the Court for objections to Claims.

**1.3.35. Petition Date** means the date each Debtor filed its petition commencing its bankruptcy case, to wit, Revolve Solar (TX) Inc. and Revolve Solar (CA) Inc. all filed on July 31, 2016.

**1.3.36. Plan** means this document, as it may be amended or modified from time to time as permitted herein and by the Bankruptcy Court.

**1.3.37. Pre-petition** means prior to the Petition Date.

**1.3.38. Priority Tax Claim** means a Claim that is entitled to priority pursuant to Bankruptcy Code Section 507(a)(8).

**1.3.39. Pro Rata** means proportionately, based on the percentage that the amount of an Allowed Claim within a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

**1.3.40. Property of the Estate** means all property in which the Debtors hold a legal or an equitable interest, including all property described in Bankruptcy Code Section 541. The Debtors shall remain in possession of all property of the estate unless provided for otherwise in the Plan or Confirmation Order.

**1.3.41. Rejection Claim** means any Claim arising pursuant to Bankruptcy Code Section 502(g) by reason of rejection by the Debtors of an executory contract or unexpired lease pursuant to Bankruptcy Code Sections 365 or 1123(b)(2).

**1.3.42. Secured Claim** means any Claim secured by a lien, security interest, or other charge or interest in property in which the one or more of the Debtors has an interest, to the extent of the value thereof (determined in accordance with Bankruptcy Code Section 506(a)).

**1.3.43. Secured Tax Claim** means any Tax Claim which is secured by real or personal property of a Debtor.

**1.3.44. Secured Creditor or Secured Claimant** means any Claimant holding a Secured Claim.

**1.3.45. Unimpaired** means not Impaired.

**1.3.46. Unsecured Claim** means any Claim not collateralized (or the extent not fully collateralized) by assets of the Debtors.

**1.3.47. Unsecured Creditor or Unsecured Claimant** means any Claimant holding an Unsecured Claim.

**1.3.48. Voidable Transfer** means all transfers voidable under Sections 544, 545, 547, 548, 549 and/or 550 of the Code or any other state or federal transfer.

## ARTICLE II: Concept of Plan and Means for Implementation

### 2.1    Concept of Plan

This is a plan of reorganization made pursuant to Chapter 11 of the United States Bankruptcy Code. This Plan is intended to resolve all Claims against the Debtors that it concerns and/or property of the Debtors of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to Bankruptcy Code Section 502(a). Only Allowed Claims (as defined above) will receive treatment afforded by the Plan. The Plan is designed to insure that Claimants shall receive at least as much pursuant to the Plan as they would receive in a liquidation pursuant to Chapter 7 of the Bankruptcy Code.

Prior to bankruptcy the Debtors were individual business organizations organized and operating under the laws of the State of Texas, California and Delaware. Following Confirmation each Revolve entity will continue its operations as an independent entity subject to the terms of the Plan, except Revolve Solar, Inc. which will be dissolved through a Chapter 7 liquidation. While the Plan states that it is a Joint Plan it still represents separate plans for each Debtor entity.

### 2.2    Issuance of New Equity

Upon Confirmation of the Plan by the Bankruptcy Court, the Texas and California Revolve Debtors shall cancel all of their equity interests, as well as any options, warrants, calls, subscriptions, or other similar rights, agreements, or commitments, contractual or otherwise, obligating these Debtors to issue, transfer, or sell any shares of equity interests. The new equity in the emerging entity shall be allocated as set forth in this Plan.

### 2.3    Reorganized Debtors

After Confirmation of the Plan by the Bankruptcy Court and upon the occurrence of the Effective Date, the Debtors shall become Reorganized Debtors.

### 2.4    Post-Petition Governance of Reorganized Debtor

Upon the issuance of the new equity interests as described below and upon the occurrence of the Effective Date, the operation of the Reorganized Debtors shall become the general responsibility of its new governing persons, subject to, and in accordance with state law. The identity of the members of the initial new governing persons will be disclosed at or prior to the Confirmation Hearing in accordance with § 1129(a)(5). Such directors shall be deemed elected or appointed as of Confirmation but shall not take office and shall not be deemed to be elected or

appointed until the occurrence of the Effective Date. Those directors and officers not continuing in office shall be deemed to have resigned therefrom as of the Effective Date.

### ARTICLE III: Classification of Claims and Interests

Pursuant to Section 1122 of the Bankruptcy Code, each of the Debtors has designated Classes of Claims and Interests under the Plan which will be treated as laid out below. Administrative Expenses and Priority Tax Claims are excluded from each Debtor's respective classes in accordance with § 1123(a)(l), and are instead treated in their own section. The classes shall be as follows:

**Claims against Revolve Solar (TX) Inc.**

- Class TX 1:     Allowed Priority Claims of Employees and Contractors (7 Claims, Total **$28,568.17**)

- Class TX 2:     Allowed Priority Claim of the IRS

- Class TX 3:     Allowed Priority Claim of Texas State Comptroller (2 Claims, Total $6,414.60)

- Class TX 4:     Allowed Unsecured Claims Greater than $20,000 (5 Claims, Total **$801,155.36**)

- Class TX 5:     Allowed Unsecured Claims $20,000 or Less (26 Claims, Total $**90,226.96**)

- Class TX 6:     Equity Interests in the Debtor

**Claims against Revolve Solar (CA) Inc.**

- Class CA 1:     Allowed Priorty Claim of Cornelius Fredrick Moore

- Class CA 2:     Allowed Priority Claims of Employees, Contractors and Customers (5 Claims, Total **$47,941.12**)

- Class CA 3:     Allowed Priority Claim of the IRS

- Class CA 4:     Allowed Unsecured Claims Greater than $20,000 (7 Claims, Total **$3,990,933.00**)

- Class CA 5:     Allowed Unsecured Claims $20,000 or Less (33 Claims, Total **$126,289.10**)

- Class CA 6:     Equity Interests in the Debtor

### ARTICLE IV: Provisions for Payment of Administrative Expenses and Priority Tax Claims

Administrative Expenses and Priority Tax Claims of the kinds specified in §§ 507(a)(l), 502(i) and 507(a)(8) of the Bankruptcy Code are excluded from the Debtor's respective classes

below in accordance with § 1123(a)(l) and are not separately classified. Such expenses and claims shall be treated as specified in this Article.

## 4.1    Treatment of Allowed Administrative Expenses

Allowed Administrative Expenses will be paid in full once Allowed, on or before the Effective Date, or at a later date as set by the Court if the allowance process extends beyond the Effective Date. Provided, however, that the holder of an Allowed Administrative Expense may agree to a different treatment. This Section shall include loans approved by the Court having an administrative expense priority.

## 4.2    Treatment of Allowed Priority Claims

Allowed Priority Claims will be paid by the Reorganized Debtor once Allowed over five (5) years with interest on such amounts at the rate of 3.5% per annum until paid in full. The payments shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full.

## 4.3    Title 28 U.S.C. Section 1930 Fees

Debtors responsible for such claims shall pay all fees assessed by the Office of the United States Trustee until this Case is closed by the Court or the Debtors are otherwise released from such obligations by the Court.

## 4.4    Convenience Classes of Unsecured Claims

Section 1122(b) of the Bankruptcy Code provides that "[a] plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience." Debtors have chosen to divide claims into classes based on the size of the claims to allow smaller creditors to have their vote count and to pay smaller creditors quicker as an administrative convenience to the Debtors. 11 U.S.C. § 1126(c) requires that a debtor have a majority in number of votes cast and two-thirds in dollar amounts of the claims in a single class supporting the Plan.

Revolve Solar (CA) has only 7 creditors owed in excess of $20,000.00, but CED and Fleet Staff are owed over $4 million dollars combined.  Smaller creditors would essentially be denied having their vote count if they were included in a class with all unsecured creditors.  Creditors who are owed more than $20,000 can opt to reduce their claims if they prefer the plan treatment of that Class.  Creditors in Class 5 (Unsecured Claims of $20,000 or less) will also be paid more quickly – with plan payments lasting only twenty-four (24) months.

Revolve Solar (TX) has even fewer creditors owed more than $20,000, with only 4 creditors being scheduled in excess of $20,000 or having claims on file in excess of $20,000.  As with Revolve (CA), dividing the classes of unsecured creditors this way is fair to the smaller creditors because their vote is far more likely to count in a class that excludes CED and Fleet Staff, who are owed around $800,000.00 according to their claims.

Fewer creditors in Class 4 (Claims Exceeding $20,000) will allow those creditors to receive more on their claim than they would receive if they were lumped into a category with all the other smaller unsecured creditors.  These larger creditors receive $4,000.00 per month pro rata for the first 24 months, and then they receive the Class 5 monthly payment of $2,500.00 per month as well.

Debtors believe this is a reasonable and fair proposal for these two different classes of creditors, as it allows smaller creditors to have a voice in plan confirmation, and pays them quicker as a convenience to the Debtors and the creditors.  Larger unsecured creditors will receive both a larger overall distribution from the Plan, and divide that sum amongst fewer parties.  Debtors believe these convenience classes are for the mutual benefit of both Debtors and creditors.

## ARTICLE V: Treatment of Claims and Interests

Debtors designate the following Classes of Claims and Interests pursuant to Bankruptcy Code Section 1122, which shall be treated in the manner set forth in this Article.

Attached as **_Exhibit "1"_** is a table summarizing the claimants in each Class.

### 6.1        Claims against Revolve Solar (TX) Inc.

#### 6.1.1    Class TX 1:  Allowed Priority Claims of Employees and Contractors

These Claims will be paid once Allowed as follows:

The Allowed Claim shall be paid in full from the continued operations of the Reorganized Debtors over 12 months with interest on such Allowed Claims at the rate of 3.25% per annum.  Payments shall commence on the first day of the month 30 days following the Plan Effective Date.

a.   There shall be no prepayment penalty if these Claims are paid early.

b.   This Class is Impaired and the holders of the Claims are entitled to vote to accept or reject the Plan.

c.   The total projected claims in this Class are $28,568.17.

| Creditor | Scheduled Claim or Proof of Claim Amount |
|----------|------------------------------------------|
| Audrey Walker | $14,169.00 |
| Chris Cook | $80.00 |
| Dawn Smith | $41.04 |

| Pete Lipscomb | $3,632.50 |
| Brian Washburn | $9,645.63 |
| **TOTAL** | **$28,568.17** |

### 6.1.2   Class TX 2:  Allowed Priority Claim of the IRS

These Claims will be paid once Allowed as follows:

(1) STATUTORY INTEREST:  The Priority claim will be paid in accordance with 11 U.S.C. § 1129(a)(9)(C)(ii), specifically the total paid in full over 5 years from the petition date.  with annual interest of 4% in equal monthly installments beginning on the first day of the month following the Effective Date and continuing on the first day of each month thereafter, if not paid in full on the Effective Date.

(2) DEFAULT:

(a) The debt owed by the Debtor to the Internal Revenue Service ("IRS") is a non-dischargeable debt, except as otherwise provided for in the Code. If the Debtor should default, the IRS is not subject to the provisions of the Bankruptcy Code and may pursue any applicable rights and remedies to collect under State or Federal law.

(b) If there is default to any provisions to the IRS, the IRS will send written notice to the Debtor. The Debtor must cure the default within 15 days of the date of the notice. If the Debtor fails to cure the payment default and fails to bring all payments current within 30 days of the demand letter, the IRS may pursue any and all available state and federal rights and remedies to collect its claims. The Debtor may cure 2 defaults; the 3rd default cannot be cured.

(c) The period of limitations on collection remains suspended under 26 U.S.C.§ 6503(h) for tax periods being paid under the Plan and terminates on the earlier of (1) completion of all required payments to the IRS; or (2) 30 days after the date of the demand letter for which the debtor failed to cure the default.

(3) PAYMENTS must be made by check or money order made payable to the U.S. Treasury. Each remittance must include the petition number and tax identification number of the Debtor. The payments must be mailed to: Internal Revenue Service, 300 E. 8th Street, Mail Stop #5026AUS, Austin, TX 78701. Payment will be deemed made on the received date at the above address.

(4) There shall be no prepayment penalty if these Claims are paid early.

(5) This Class is Impaired and the holders of the Claims are entitled to vote to accept or reject the Plan.

(6) The total projected claims in this Class are less than $50,000 even though the IRS has filed a claim for $100,000.

### 6.1.3   Class TX 3:  Allowed Priority Claims of Taxing Authorities

These Claims will be paid once Allowed as follows:

The Allowed Claim shall be paid in full from the continued operations of the Reorganized Debtors over 60 months with interest on such Allowed Claims at the rate of 3.25% per annum.  Payments shall commence on the first day of the month 30 days following the Plan Effective Date.

a.   There shall be no prepayment penalty if these Claims are paid early.

b.   This Class is Impaired and the holders of the Claims are entitled to vote to accept or reject the Plan.

c.   The total projected claims in this Class are $3,129.38 and $285.22.

| Creditor | Schedules | Proof of Claim |
|---|---:|---|
| Texas Comptroller | $6,129.38 | |
| Travis County Tax Office | $285.22 | |
| **TOTAL** | **$6,414.60** | |

### 6.1.4   Class TX 4:  Allowed General Unsecured Claims Greater than $20,000.

The Creditors in this Class with Allowed Claims will be treated as follows:

Creditors in this Class with Allowed Claims will be paid pro-rata out of $4,000.00 per month set aside by the Debtor to pay the Allowed Claims in this Class. Payments shall commence on the first day of the month 60 days following the Plan Effective Date.  Payments shall continue for 60 months.  Once the Class 5 Claims are paid as set forth herein the funds that would otherwise be used to pay the Class 5 Claims shall be paid to the Class 4 claims at the rate of $2,500.00 per month for months 25-60 of the Plan.  Under this Plan, Class 4 Claimants will receive 41% of their Allowed Claims.[1]

This Class is Impaired and the holders of the Claims are entitled to vote to accept or reject the Plan. The total claims in this Class are estimated at $801,115.36.

| Creditor | Schedules | Proof of Claim |
|---|---:|---|

---

[1] Valley Mountain Regional Center's filed a claim on September 8, 2016 (Claim #3), but withdrew it on October 19, 2016 (Dkt. 60), so this claim has been removed from the estimate of claims in this class.

| | | |
|---|---:|---:|
| Consolidated Electrical Distributors Inc. | $514,337.86 | $599,685.14 |
| FleetStaff, Inc. | $204,465.14 | |
| Gexpro | $25,521.34 | |
| Krannich Solar | $56,831.02 | |
| **TOTAL** | **$801,115.36** | |

### 6.1.5   Class TX 5: Allowed General Unsecured Claims $20,000 or less

The Creditors in this Class with Allowed Claims will be treated as follows:

Creditors in this Class with Allowed Claims will be paid pro-rata out of $2,500.00 per month set aside by the Debtor to pay the Allowed Claims in this Class. Payments shall commence on the first day of the month 30 days following the Plan Effective Date. Payments shall continue for 24 months.  Under this Plan, Class 5 Claimants will receive 66% of their Allowed Claims.

This Class is Impaired and the holders of the Claims are entitled to vote to accept or reject the Plan. The total claims in this Class are estimated at $90,226.96.

| Creditor | Schedules | Proof of Claim |
|---|---:|---:|
| Accutemps | $5,268.58 | |
| AlphaGraphics | $660.15 | |
| Avis Rent A Car | $1,285.04 | |
| Backstead Terry PLLC | $6,191.50 | |
| Barron & Newburger, PC | $1,059.30 | |
| Capital Premium Financing | $916.06 | |
| Chirp Security & Audio | $305.27 | |
| Comerica | $2,165.87 | |
| Compliant Background Chex LLC | $128.82 | |
| Crawford Electric | $15,804.87 | $15,804.87 |
| DLA Piper, LLP | $1,666.67 | |
| Fastenal | $1,287.36 | |
| Grande Communications Network, Omnia | $361.44 | |

| | | |
|---|---:|---|
| Green Mountain Energy Company | $113.55 | |
| GreenSky | $4,413.99 | |
| IBM Corporation | $171.00 | |
| Jan-Pro of Austin | $422.18 | |
| Office Edge / COSA, Inc. | $633.37 | |
| ProStar Services Inc. | $300.83 | |
| Silicon Valley Bank | $7,050.33 | |
| Soligent Distribution, LLC | $17,334.44 | |
| Summit Electric Supply Inc. | $12,906.32 | |
| Taube Summers LLP | $982.90 | |
| UPS | $344.74 | |
| Wes Walters Realty Inc. | $8,095.26 | |
| Xerox Corporation | $356.82 | |
| **TOTAL** | **$90,226.96** | |

### 6.1.6    Class TX 6: Equity Interests in the Debtor

Upon Confirmation of the Plan by the Bankruptcy Court, Revolve Solar (TX), Inc. shall cancel all of its equity interests, as well as any options, warrants, calls, subscriptions, or other similar rights, agreements, or commitments, contractual or otherwise, obligating Revolve Solar (TX), Inc. to issue, transfer, or sell any shares of equity interests.  After cancellation, Revolve Solar (TX), Inc shall then issue new equity shares.

In the interest of ensuring that the Plan provides the greatest benefit to creditors and equity interest holders and in order to satisfy the requirements of the absolute priority rule, prior to the confirmation hearing for the Plan, Revolve Solar (TX), Inc. shall hold an equity auction for purchase of its newly-issued equity.

Subject to certain requirements described herein, all interested parties shall have the opportunity to purchase the reorganized Debtor's new equity at the Confirmation hearing pursuant to the following auction procedures:

- Any party interested in bidding to acquire the new equity interests must provide notice to Revolve Solar (TX), Inc. and its counsel ten (10) business days prior to the Confirmation hearing, and also attend the Confirmation hearing and advise the Bankruptcy Court at the commencement of the hearing of the party's interest in participating in the auction of the

equity interests, at which point the Bankruptcy Court may direct that an auction be conducted prior to the continuation of the Confirmation hearing;

- The opening bid at any auction shall be by the existing equity interest holder in the amount of $10,000 (the "Opening Bid").  The $10,000.00 value of the Opening Bid was arrived at through the use of an analysis of the current market value of the combined total of each of the reorganizing Debtors' equity shares.
- Each subsequent bid following the Opening Bid must exceed any previous highest bid in an amount of at least $1,000.
- Any party submitting a bid at the auction must have proof of funds to pay the party's bid at the auction;
- The reorganized Debtor's new equity interest shall be sold to the bidder submitting the highest non-contingent cash offer at the auction;
- The winning bidder must actually deposit the funds in the Debtor's bank account within 48 hours of the announcement of the winning bid, or be deemed to have defaulted on the purchase of the Debtor's equity.
- If the winning bidder at the auction fails to close on the purchase as set forth above, the party submitting the next highest bid shall be deemed the winning bidder;
- The prevailing party at the auction must assume all of the obligations of the Debtor, including but not limited to Plan Payments to creditors, administrative claimants, priority claims and any tax obligations under the Plan.
- The funds from the auction sale shall be deposited into the Debtor's account and used to fund the Plan including the payment of administrative claims.
- The Debtors shall solicit such bids by noticing the Plan out to creditors in this Case.

Furthermore, irrespective of who wins the equity auction, the equity auction shall only go into effect if the Bankruptcy Court confirms the Plan.  If the Bankruptcy Court does not confirm the Plan, then Revolve Solar (TX), Inc. shall not cancel its equity and any equity auction shall be null and void and have no effect as to the ownership of Revolve Solar (TX), Inc.  Further, if, after confirmation, the Bankruptcy Court revokes its confirmation of the Plan or the Bankruptcy Court's confirmation of the Plan is overturned on appeal, then the equity auction shall be null and void and have no effect, and the ownership of the equity of the respective Debtor shall remain with or revert to (as appropriate) the pre-confirmation owner, Tim Padden.

The Equity Interest Holder is Impaired under the Plan.

### 6.2      Claims against Revolve Solar (CA) Inc.

### 6.2.1.   Class CA 1:  Allowed Priority Claim of Cornelius Fredrick Moore
This claim shall be paid once Allowed as follows:

This Claim is an Allowed Claim and shall be paid in full from the continued operations of the Reorganized Debtors over 60 months with interest at the rate of 5% per annum.

a.  There shall be no prepayment penalty if this Claim is paid early.

b.  This Class is Impaired and the holder of the Claim is entitled to vote to accept or reject the Plan.

c.  The total claim amount is approximately $250,000.00.

### 6.2.2   Class CA 2:  Allowed Priority Claims of Employees and Contractors
These Claims will be paid once Allowed as follows:

The Allowed Claim shall be paid in full from the continued operations of the Reorganized Debtors over 24 months with interest on such Allowed Claims at the rate of 3.25% per annum.  Payments shall commence on the first day of the month 30 days following the Plan Effective Date.

a.  There shall be no prepayment penalty if these Claims are paid early.

b.  This Class is Impaired and the holders of the Claims are entitled to vote to accept or reject the Plan.

c.  The total projected claims in this Class are $66,627.61.

| Creditor | Scheduled Claim or Proof of Claim Amount |
|---|---|
| Carol Eastman | $256.82 |
| Jon Lenton | $13,346.50 |
| Ken Stout | $20,266.99 |
| Deanna Tanner | $1,000.00 |
| Mark Cato | $1,000.00 |
| Mark Kille | $14,940.00 |
| Matt Stuart | $1,600.00 |
| Misty Hair | $48.30 |

| Audrey Walker | $14,169.00 |
|---|---|
| **TOTAL** | **$66,627.61** |

### 6.2.3   Class CA 3:  Allowed Priority Claim of the IRS

These Claims will be paid once Allowed as follows:

(1) STATUTORY INTEREST:  The Priority claim will be paid in accordance with 11 U.S.C. § 1129(a)(9)(C)(ii), specifically the total paid in full over 5 years from the petition date.  with annual interest of 4% in equal monthly installments beginning on the first day of the month following the Effective Date and continuing on the first day of each month thereafter, if not paid in full on the Effective Date.

(2) DEFAULT:

(a) The debt owed by the Debtor to the Internal Revenue Service ("IRS") is a non-dischargeable debt, except as otherwise provided for in the Code. If the Debtor should default, the IRS is not subject to the provisions of the Bankruptcy Code and may pursue any applicable rights and remedies to collect under State or Federal law.

(b) If there is default to any provisions to the IRS, the IRS will send written notice to the Debtor. The Debtor must cure the default within 15 days of the date of the notice. If the Debtor fails to cure the payment default and fails to bring all payments current within 30 days of the demand letter, the IRS may pursue any and all available state and federal rights and remedies to collect its claims. The Debtor may cure 2 defaults; the 3rd default cannot be cured.

(c) The period of limitations on collection remains suspended under 26 U.S.C.§ 6503(h) for tax periods being paid under the Plan and terminates on the earlier of (1) completion of all required payments to the IRS; or (2) 30 days after the date of the demand letter for which the debtor failed to cure the default.

(3) PAYMENTS must be made by check or money order made payable to the U.S. Treasury. Each remittance must include the petition number and tax identification number of the Debtor. The payments must be mailed to: Internal Revenue Service, 300 E. 8th Street, Mail Stop #5026AUS, Austin, TX 78701. Payment will be deemed made on the received date at the above address.

(4) There shall be no prepayment penalty if these Claims are paid early.

(5) This Class is Impaired and the holders of the Claims are entitled to vote to accept or reject the Plan.

(6) The total projected claims in this Class are less than $50,000 even though the IRS has filed a claim for $100,000.

### 6.2.4   Class CA 4: Allowed General Unsecured Claims Greater than $20,000.

The Creditors in this Class with Allowed Claims will be treated as follows:

Creditors in this Class with Allowed Claims will be paid pro-rata out of $4,000.00 per month set aside by the Debtor to pay the Allowed Claims in this Class. Payments shall commence on the first day of the month 60 days following the Plan Effective Date. Payments shall continue for 60 months. Once the Class 5 Claims are paid as set forth herein the funds that would otherwise be used to pay the Class 5 Claims shall be paid to the Class 4 claims at the rate of $2,500.00 per month for months 25-60 of the Plan. Under this Plan, Class 4 Claimants will receive 8% of their Allowed Claims.

This Class is Impaired and the holders of the Claims are entitled to vote to accept or reject the Plan. The total claims in this Class are estimated at $3,990,933.00.

| Creditor | Schedules | Proof of Claim |
|---|---|---|
| Alston & Bird, LLP | $60,936.04 | |
| Complete Business Solutions Group | $69,150.00 | |
| Consolidated Electrical Distributors Inc | $3,162,682.14 | $3,880,500.77 |
| FleetStaff, Inc. | $306,697.70 | $316,644.43 |
| Harbert Roofing, Inc. | $25,358.00 | $25,318.00 |
| Soligent Distribution, LLC | $193,218.13 | $181,015.50 |
| Krannich Solar | $172,890.99 | $234,837.96 |
| **TOTAL** | **$3,990,933.00** | |

### 6.2.5   Class CA 5: Allowed General Unsecured Claims $20,000 or less

The Creditors in this Class with Allowed Claims will be treated as follows:

Creditors in this Class with Allowed Claims will be paid pro-rata out of $2,500.00 per month set aside by the Debtor to pay the Allowed Claims in this Class. Payments shall commence on the first day of the month 30 days following the Plan Effective Date. Payments shall continue for 24 months. Under this Plan, Class 5 Claimants will receive 48% of their Allowed Claims.

This Class is Impaired and the holders of the Claims are entitled to vote to accept or reject the Plan. The total claims in this Class are estimated at $126,289.10.

| Creditor | Schedules | Proof of Claim |
|---|---|---|

| | | |
|---|---|---|
| Applied Engineering | $1,225.00 | |
| Big O Tires | $944.07 | |
| Bill Tree Services, Inc | $2,500.00 | |
| Capital Premium Financing | $916.06 | |
| Comerica | $3,071.71 | |
| Compliant Background Chex LLC | $759.50 | $759.50 |
| DLA Piper, LLP | $1,666.67 | |
| Fasteners Inc. | $3,394.28 | |
| Fortune Energy, Inc. | $13,091.15 | |
| GEICO Commercial Auto Insurance | $4,572.14 | |
| Gibbs Giden Attorneys at Law | $1,500.00 | |
| GreenSky | $19,725.72 | |
| Kid Giant, LLC | $170.00 | |
| LYRO Printing | $4,569.48 | |
| Mast Roofing, Inc. | $4,250.00 | $4,250.00 |
| PG&E | $97.32 | |
| Platt Electric Suply | $3,133.98 | |
| Quill Corporation | $585.20 | |
| Ray Morgan Company, Inc | $909.49 | |
| Redding Fastners, Inc. | $3,163.75 | |
| Sandler Training | $17,291.15 | |
| Shasta Builders Exchange | $533.99 | |
| Sierra Vista Vegetation Removal & Tree Service | $3,100.00 | |
| Silicon Valley Bank | $4,306.51 | |
| Sunstate Equipment Co. | $1,121.49 | |
| Tugwell Roofing Co. | $19,785.00 | $20,382.01 |
| United Rentals (North America), Inc. | $702.96 | |

| UPS | $285.76 | |
|---|---|---|
| Valley YellowPages | $80.00 | |
| Wex Bank | $8,264.64 | |
| World Telecom & Surveillance, Inc. | $95.00 | |
| Yellow Pages | $81.08 | |
| Yellow Pages United | $396.00 | |
| **TOTAL** | **$126,289.10** | |

### 6.2.6   Class CA 6: Equity Interests in the Debtor

Upon Confirmation of the Plan by the Bankruptcy Court, Revolve Solar (CA), Inc. shall cancel all of its equity interests, as well as any options, warrants, calls, subscriptions, or other similar rights, agreements, or commitments, contractual or otherwise, obligating Revolve Solar (CA), Inc. to issue, transfer, or sell any shares of equity interests.  After cancellation, Revolve Solar (CA), Inc shall then issue new equity shares.

In the interest of ensuring that the Plan provides the greatest benefit to creditors and equity interest holders and in order to satisfy the requirements of the absolute priority rule, prior to the confirmation hearing for the Plan, Revolve Solar (CA), Inc. shall hold an equity auction for purchase of its newly-issued equity.

Subject to certain requirements described herein, all interested parties shall have the opportunity to purchase the reorganized Debtor's new equity at the Confirmation hearing pursuant to the following auction procedures:

- Any party interested in bidding to acquire the new equity interests must provide notice to Revolve Solar (CA), Inc. and its counsel ten (10) business days prior to the Confirmation hearing, and also attend the Confirmation hearing and advise the Bankruptcy Court at the commencement of the hearing of the party's interest in participating in the auction of the equity interests, at which point the Bankruptcy Court may direct that an auction be conducted prior to the continuation of the Confirmation hearing;
- The opening bid at any auction shall be by the existing equity interest holder in the amount of $10,000 (the "Opening Bid").  The $10,000.00 value of the Opening Bid was arrived at through the use of an analysis of the current market value of the combined total of each of the reorganizing Debtors' equity shares.
- Each subsequent bid following the Opening Bid must exceed any previous highest bid in an amount of at least $1,000.
- Any party submitting a bid at the auction must have proof of funds to pay the party's bid at the auction;
- The reorganized Debtor's new equity interest shall be sold to the bidder submitting the highest non-contingent cash offer at the auction;

- The winning bidder must actually deposit the funds in the Debtor's bank account within 48 hours of the announcement of the winning bid, or be deemed to have defaulted on the purchase of the Debtor's equity.
- If the winning bidder at the auction fails to close on the purchase as set forth above, the party submitting the next highest bid shall be deemed the winning bidder;
- The prevailing party at the auction must assume all of the obligations of the Debtor, including but not limited to Plan Payments to creditors, administrative claimants, priority claims and any tax obligations under the Plan.
- The funds from the auction sale shall be deposited into the Debtor's account and used to fund the Plan including the payment of administrative claims.
- The Debtors shall solicit such bids by noticing the Plan out to creditors in this Case.

Furthermore, irrespective of who wins the equity auction, the equity auction shall only go into effect if the Bankruptcy Court confirms the Plan. If the Bankruptcy Court does not confirm the Plan, then Revolve Solar (CA), Inc. shall not cancel its equity and any equity auction shall be null and void and have no effect as to the ownership of Revolve Solar (CA), Inc. Further, if, after confirmation, the Bankruptcy Court revokes its confirmation of the Plan or the Bankruptcy Court's confirmation of the Plan is overturned on appeal, then the equity auction shall be null and void and have no effect, and the ownership of the equity of the respective Debtor shall remain with or revert to (as appropriate) the pre-confirmation owner, Tim Padden.

The Equity Interest Holder is Impaired under the Plan.

## ARTICLE VI: Voting

Voting pursuant to Section 1126 of the Bankruptcy Code shall take place by ballot. Ballots will be distributed with the "solicitation package" approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

Each entity entitled to vote may vote only in the specific case in which it holds a claim, and such vote will only be counted in its respective case.

## ARTICLE VII: Plan Implementation

The Plan will be implemented and consummated post-effective date, pursuant to § 1123(a)(5) of the Code, by the commencement of payments as called for above. The Reorganized Debtors may elect to borrow money post-confirmation in order to make payments called for by this Plan.

## ARTICLE VIII: Executory Contracts and Unexpired Leases

### 8.1    Assumption of Executory Contracts

Debtors shall assume, pursuant to Bankruptcy Code Section 1123(b)(2), all executory contracts that are owned by the Debtors on the Confirmation Date, unless specifically rejected by separate motion, and same shall be considered in good standing as of the Confirmation Date.

### 8.2    Rejection of Executory Contracts and Unexpired Leases

Except as otherwise provided in the Plan or in any order of the Bankruptcy Court, each Debtor shall have the right as provided for in the Bankruptcy Code to assume or reject any executory contract or unexpired lease. Each Debtor shall assume or reject each executory contract or unexpired lease by a separate motion filed with the Bankruptcy Court. Provided, however, that upon Confirmation of this Plan, to the extent a Debtor has not expressly assumed by Motion an executory contract or unexpired lease, such contract or lease shall be deemed rejected as of the Effective Date without further notice or order, and the Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejection, pursuant to § 365.

### 8.3    Reservation of Rights

Any contract or lease that a Debtor assumes remains subject to the same rights that such Debtor held or holds at, on, or after the Petition Date to modify or terminate such agreement under applicable non-bankruptcy law. Each executory contract or unexpired lease that a Debtor assumes or assumes and assigns shall revest in and be fully enforceable by the Reorganized Debtor or, if assigned, by the purchaser in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable federal law.

### 8.4    Bar Date for Claims Based on Rejection

If the rejection of an executory contract or an unexpired lease by a Debtor results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtor, their affiliates, successors, assigns, Estates, or their properties or agents, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtor, by the earlier of (a) the end of the month following the period in which the Effective Date occurs or (b) such other deadline as the Court may set for asserting a Claim for such damages. Any Rejection Claim arising from the rejection of an unexpired lease or executory contract shall be treated as a General Unsecured Claim; provided, however, that any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission by the Debtors that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtors of any objections to such Claim if asserted.

### ARTICLE IX: Discharge, Releases, and Limitation of Liability

### 9.1    Releases and Discharge of Claims and Interests

Except as otherwise specifically provided by the Plan, the Confirmation of the Plan as to Debtors shall discharge that Debtor from any debt that arose before the Confirmation Date, and any debt of the kind specified in §§ 502(g), 502(h) or 502(i), whether or not a proof of Claim is Filed or is deemed Filed, whether or not such Claim is an Allowed Claim, and whether or not the holder of such Claim has voted on the Plan.

Except as otherwise specifically provided by the Plan, the distributions and rights that are provided in the Plan shall be in complete satisfaction and release, effective as of the Confirmation Date (but subject to the occurrence of the Effective Date) of

i.     all Claims and causes of action against, liabilities of, liens on, obligations of and interests in each Debtor and Reorganized Debtor and the assets and properties of each Debtor and Reorganized Debtor, whether known or unknown; and

ii.    all causes of action (whether known or unknown, either directly or derivatively through any Debtor or Reorganized Debtor) against, Claims (as defined in § 101) against, liabilities (as guarantor of a Claim or otherwise) of, liens on the direct or indirect assets and properties of, and obligations of successors and assigns to each Debtor and Reorganized Debtor and its successors and assigns based on the same subject matter as any Claim or Interest or based on any act or omission, transaction or other activity or security, instrument, or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date that was or could have been the subject of any Claim or Interest, in each case regardless of whether a proof of Claim or Interest was Filed, whether or not Allowed and whether or not the holder of the Claim or Interest has voted on the Plan.

## 9.2    Released Parties

On the Effective Date, the Revolve Debtors, on behalf of itself, unconditionally releases, and hereby are deemed to release unconditionally on such date each present officer, director, employee, consultant, financial advisor, attorney, accountant, professional, and other representatives of the Debtors (collectively as the "Released Parties" and any of the Released Parties individually shall be referred to as a "Released Party"), from any and all claims, obligations, suits, judgments, damages, rights, causes of action, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon or related to any act or omission, transaction, event, or other occurrence in any way relating to or in connection with the Plan, except that no Released Party shall be released from acts or omissions which are the result of willful misconduct, gross negligence or fraud.  As part of the Releases in this Plan, Tim Padden shall also receive a Release from all claims, causes of action, obligations and liabilities owed to the Debtors or any creditors of the Debtors whether they have asserted such a claim or not so that he may contribute funds, time and energies to the Debtors to oversee their continued operations and their Plan.  Any scheduled claims are expressly not released.

The foregoing release provisions are an integral part of the Plan and are essential to its implementation. If and to the extent that the Bankruptcy Court concludes that the Plan cannot be confirmed with any portion of the foregoing releases, the Debtors reserve the right to amend the Plan so as to give effect as much as possible to the foregoing releases, or to delete them.

## 9.3    Limitation of Liability

Neither any Debtor or Reorganized Debtor nor any of their respective officers, directors, partners, employees, members, agents, advisors, affiliates, underwriters or investment bankers, nor any other professional persons employed by any of them (collectively, the "Exculpated Persons"),

shall have or incur any liability to any entity for any act taken or omission made in good faith in connection with or related to formulating, negotiating, implementing, confirming or consummating the Plan, the Disclosure Statement or any Plan Document. The Exculpated Persons shall have no liability to any Debtor, Reorganized Debtor, Creditor, Interest holder, any other party in interest in the Chapter 11 Cases or any other entity for actions taken or not taken under the Plan, in connection herewith or with respect thereto, or arising out of their administration of the Plan or the property to be distributed under the Plan, in good faith, including, without limitation, failure to obtain Confirmation or to satisfy any condition or conditions, or refusal to waive any condition or conditions, up to the occurrence of the Effective Date, and in all respects such Exculpated Persons shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

### ARTICLE X: Claims and Resolution of Claim Disputes

### 10.1    The Debtors' Causes of Action

Except as otherwise released pursuant to the Plan, all Claims recoverable under Section 550 of the Bankruptcy Code, all Claims against third parties on account of an indebtedness, and all other Claims of any kind or character whatsoever owed to or in favor of the Debtors or the Estate to the extent not specifically compromised and released pursuant to the Plan or any agreement referred to and incorporated herein, are hereby preserved and retained for enforcement by the Debtors for the benefit of the Creditors subsequent to the Effective Date.

### 10.2    Time for Filing Claims

The holder of any Administrative Claim other than (i) a Fee Claim, (ii) a liability incurred and paid in the ordinary course of business by the Debtor, or (iii) an Allowed Administrative Claim, must file with the Bankruptcy Court and serve on the Debtors and their respective counsel, notice of such Administrative Claim within thirty (30) days after the Effective Date. At a minimum, such notice must identify (i) the name of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

Each Person asserting an Administrative Expense that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on the Debtors' counsel and the U. S. Trustee, a Fee Application within sixty (60) days after the Effective Date.

A person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

A Person asserting a claim based on the rejection of an executory contract or lease shall be governed by the terms above in the Article on Executory Contracts and Unexpired Leases.

Liabilities incurred from the Petition Date through the Effective Date in the ordinary course of business shall be paid in the ordinary course of business by the Debtor.

Each Person holding a claim not otherwise described in this Section shall file a proof of claim with the Clerk of the Bankruptcy Court and serve notice on Debtors and their counsel by the Bar Date. Unless otherwise provided for by the Bankruptcy Code or Rules, failure to do so shall result in the Claim being forever barred and discharged.

## 10.3    Objections to Claims

Any party authorized by the Bankruptcy Code may object to the allowance of Pre- petition Claims at any time prior to sixty (60) days after the Effective Date and, as to Rejection Claims or Claims resulting from a voided transfer, at any time prior to sixty (60) days after the filing of any such Rejection Claim or claim based on a voided transfer. Any proof of Claim filed after the Court sets bar dates shall be of no force and effect and shall be deemed disallowed and forever barred unless the Court grants allowance of a late claim under the standards for granting a late claim. All Contested Claims shall be litigated to Final Order; provided, however, that the Debtors may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court.

No distributions under the Plan shall be made to the holder of a Claim that is in dispute, unless and until such Claim becomes an Allowed Claim. If a Claim is disputed in whole or in part because a Debtor asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of its Allowed Claim. In addition, any party authorized by the Bankruptcy Code, at any time, may request that the Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of any prior objections.

## ARTICLE XI: Effect of Confirmation

## 11.1    Discharge and Release of Debtors

Pursuant to Bankruptcy Code Section 1141, confirmation of the Plan will, with respect to each Debtor for which the Plan is confirmed, (1) discharge such Debtor and (2) except as otherwise specifically provided herein or in the order confirming the Plan, vest all property of the estate in such Reorganized Debtor free and clear of all liens, claims, and encumbrances of any kind.

## 11.2    Legal Binding Effect

The provisions of the Plan, pursuant to Bankruptcy Code Section 1141, shall bind the Debtors and all Creditors, whether or not they accept the Plan. The distributions provided for Claimants shall not be subject to any Claim by another creditor or interest holder by reason of any assertion of a contractual right of subordination.

## 11.3    Permanent Injunction

Confirmation of the Plan shall result in the issuance of an injunction such that all entities who have held, hold, or may hold Claims against or Interests in a Debtor are, with respect to any such Claims or Interests, permanently enjoined from and after the Confirmation Date from:

a.      commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting any Debtor or Reorganized Debtor, any of their professionals, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any Debtor, or any property of any such transferee or successor;

b.      enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, of any judgment, award, decree or order against any Debtor or Reorganized Debtor, any of their professionals, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any Debtor, or any property of any such transferee or successor;

c.      creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against any Debtor or Reorganized Debtor, any of their professionals, any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing entities;

d.      asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due to any Debtor or Reorganized Debtor, any of their professionals, any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing entities; and

e.      acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

Provided, however, that each holder of a Contested Claim may continue to prosecute its proof of Claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce their rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan.

In the event that any Entity takes any action that is prohibited by, or is otherwise inconsistent with the provisions of this Section of the Plan, then, upon notice to the Bankruptcy Court, the action or proceeding in which the claim of such entity is asserted shall automatically be transferred to the Bankruptcy Court for enforcement of the provisions of this Section of the Plan.

## ARTICLE XII: General Provisions

### 12.1    Request for Relief Under Bankruptcy Code Section 1129

In the event any Impaired Class shall fail to accept the Plan in accordance with Bankruptcy Code Section 1129(a), the Debtors reserve the right to, and do hereby request the Bankruptcy Court to confirm the Plan in accordance with Bankruptcy Code Section 1 129(b).

### 12.2    Revocation

The Debtors reserve the right to revoke and withdraw the Plan at any time prior to the Confirmation Date.

### 12.3    Effect of Withdrawal or Revocation

If the Debtors revoke or withdraw the Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

### 12.4    Due Authorization by Creditors

Each and every Claimant who elects to participate in the distributions provided herein warrants that it is authorized to accept in consideration of its Claim against the Debtors the distributions provided in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under the Plan.

### 12.5    Entire Agreement

The Plan, as described herein, the Confirmation Order, and all other documents and instruments to effectuate the Plan provided for herein, constitute the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersedes all prior discussions and documents.

### 12.6    Section 1146 Exemption

Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange or any security under the Plan or the making or delivery of any instrument or transfer pursuant to, in implementation of, or as contemplated by the Plan or the transfer of any property pursuant to the Plan shall not be taxed under any federal, state or local law imposing a stamp, transfer, or similar tax or fee.

### 12.7    Provisions Governing Distributions

All payments and distributions under the Plan shall be made by the Debtors as indicated. Any payments or distributions to be made by the Debtors pursuant to the Plan shall be made as soon as reasonably practicable after the Effective Date, except as otherwise provided for in the Plan, or as may be ordered by the Bankruptcy Court. Any payment or distribution by the Debtors pursuant to the Plan, to the extent delivered by the United States Mail, shall be deemed made when deposited into the United States Mail.

Payments of Cash to be made by the Debtors pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the proofs of Claim or proofs of Interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or proof of Interest is filed). All Claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date. After such date, all unclaimed property shall remain the property of the Debtors and the Claim of any other holder with respect to such unclaimed property shall be discharged and forever barred.

Checks issued by the Debtors in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof. Requests for reissuance of any check shall be made directly to the Debtors by the holder of the Allowed Claim to whom such check originally was issued. Any claim in respect of such a voided check shall be made within ninety (90) days after the date of delivery of such check. After such date, all Claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall become Unclaimed Property and returned to the Debtors.

No interest shall be paid on any Claim unless, and only to the extent that, the Plan specifically provides otherwise.

## 12.8  Governing Law

Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

## 12.9  Modification of Plan

A Debtor may, pursuant to Section 1127(a) of the Bankruptcy Code, modify the Plan at any time prior to the entry of the Confirmation Order. After entry of the Confirmation Order, a Reorganized Debtor may, pursuant to Section 1127(b) and (c) of the Bankruptcy Code and with approval of the Bankruptcy Court, modify or amend the Plan in a manner that does not materially or adversely affect the interests of Persons affected by the Plan without having to solicit acceptance of such modification, and may take such steps as are necessary to carry out the purpose and effect of the Plan as modified.

## 12.10  Number and Gender of Words

Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context. Words of any gender shall include each other gender where appropriate.

## 12.11  Headings

The headings and captions used in the Plan are for convenience only and shall not be deemed to limit, amplify, or modify the terms of the Plan nor affect the meaning thereof.

## 12.12    Time Computation

In computing any period of time prescribed herein, the provisions of Federal Rule of Bankruptcy Procedure Rule 9006(a) shall apply.

## 12.13    Severability

If any term or provision of the Plan is determined by a Court to be invalid, void, or unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of any other provision of the Plan. If any term or provision of the Plan is of such a character as to deny Confirmation, the Debtors reserve the right to strike or modify such provision and seek Confirmation of the Plan as modified. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.

## 12.14    No Admissions

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by any Entity with respect to any matter set forth herein.

## ARTICLE XIII: Administrative Provisions

## 13.1    Retention of Jurisdiction

Notwithstanding confirmation of the Plan or the Effective Date having occurred, the Court will retain jurisdiction for the following purposes:

1.    <u>Allowance of Claims</u>. To hear and determine the allowability of all Claims upon objections to such Claims.

2.    <u>Executory Contracts and Unexpired Leases Proceedings</u>. To act with respect to proceedings regarding the assumption of any executory contract or unexpired lease of the Debtors pursuant to Sections 365 and 1123 of the Code and this Plan.

3.    <u>Plan Interpretation</u>. To resolve controversies and disputes regarding the interpretation of the Plan.

4.    <u>Plan Implementation</u>. To implement and enforce the provisions of the Plan and enter orders in aid of confirmation and implementation of the Plan.

5.    <u>Plan Modification</u>. To modify the Plan pursuant to Section 1127 of the Code and applicable Bankruptcy Rules, except that no modification shall be made to the Plan that would impair, diminish or affect in any way the rights of participants of any Classes of the Plan without the consent of such Class.

6.      <u>Adjudication of Controversies</u>. To adjudicate such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court against the Debtors.

7.      <u>Injunctive Relief</u>. To issue any injunction or other relief as appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or in the Confirmation Order.

8.      <u>Interpleader Action</u>. To entertain interpleader actions concerning assets to be distributed or other assets of the Estate.

9.      <u>Correct Minor Defects</u>. To correct any defect, cure any omission or reconcile any inconsistency or ambiguity in the Plan, the Confirmation Order or any document executed or to be executed in connection therewith, as may be necessary to carry out the purposes and intent of the Plan, provided that the rights of any holder or an Allowed Claim are not materially and adversely affected thereby.

10.     <u>Fees and Expenses and Administrative Claims</u>. To review and authorize payment of professional fees and expenses or any other administrative claim incurred prior to the Effective Date.

11.     <u>Post-Confirmation Orders Regarding Confirmation</u>. To enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated.

12.     <u>Final Decree</u>. To enter a final decree closing the Case pursuant to Bankruptcy Rule 3022.

13.     <u>Settlements.</u> To approve settlements relating to the above

14.     <u>Resolution of Related Matters</u>. To hear any other matter not inconsistent with the Bankruptcy Code or the Bankruptcy Court's jurisdiction.

## 13.2   Successors and Assigns

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, not just the entity but also the heirs, executors, administrators, successors, and assigns of such entity.

## 13.3   Notices

After Confirmation, all notices, requests or demands for payments provided for in the Plan shall be in writing and shall be addressed to:

Joyce W. Lindauer

12720 Hillcrest Road, Suite 625
Dallas, Texas 75230
(972) 503-4033 Telephone
(972) 503-4034 Facsimile

with copies to:

Tim Padden
1800 W. Howard Lane
Suite 100
Austin, TX 78728

For so long as the Chapter 11 Cases remain open, any of the above may, from time to time, change its address for future notices and other communications hereunder by filing a notice of the change of address with the Bankruptcy Court. After the Chapter 11 Cases are closed, any of the above may, from time to time, change its address for future notices and other communications hereunder by service upon any party in interest expressly requesting notice of same. Any and all notices given under the Plan shall be effective when received.

Respectfully submitted,

_/s/ Joyce W. Lindauer_
Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
12720 Hillcrest Road, Suite 625
Dallas, Texas 75230
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Debtors

_/s/ Tim Padden_
Tim Padden
President
of Revolve Solar Debtors